# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FIRSTMERIT BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-cv-4930 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| THE KLOYSNER GROUP, LLC, BETSY ) | |
| BARBIER, ALLEN BARBIER, YMS ) | |
| VENTURES INTERNATIONAL, INC., ) | |
| AND LEONID GOLDFARB, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff FirstMerit Bank, N.A. ("FirstMerit"), as assignee of the Federal Deposit Insurance Company and receiver for Midwest Bank and Trust Company ("Midwest"), brings this suit against The Kloysner Group, LLC, ("Kloysner"), Betsy Barbier and Allen Barbier ("Barbier Defendants"), YMS Ventures International, Inc. ("YMS"), and Leonid Goldfarb ("Goldfarb") alleging that Defendants violated various sections of the Illinois Uniform Fraudulent Transfer Act ("IUFTA"). Defendants now move this Court to dismiss the Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, this Court denies Defendants' Motion to Dismiss [25].

**Background**

The following allegations from the Amended Complaint are taken as true for the purpose of ruling on the present motion. On September 12, 2007, Potomac Property Management, LLC ("Potomac") borrowed $1.1 million from Midwest to purchase two parcels of real estate. The same day, Dalila Feldman ("Feldman") executed a commercial

guaranty backing Potomac's debt. Goldfarb also personally guaranteed Potomac's debt; however, on November 30, 2010, he was declared bankrupt and his liability was discharged.

In May of 2011, Potomac failed to repay its debt and defaulted on the loan. Feldman did not fulfill her obligation to repay Potomac's debt. The next month, FirstMerit—successor in interest to Midwest—filed a complaint in the Circuit Court of Cook County Illinois seeking to foreclose on Potomac's properties and suing Feldman for breach of her guaranty. The proceedings terminated on July 23, 2014 with the state court ordering a foreclosure of sale on Potomac's properties and entering a deficiency judgment against Feldman for $631, 235.43.

Feldman was the sole owner and employee of Reliable Medical Supply, Inc. ("Reliable"), an Illinois corporation that delivered medical supplies to patients. Although Reliable had stopped conducting legitimate business in early 2012, it still retained large amounts of liquid assets and had no creditors. In an effort to discover Reliable's assets and recover the money owed by Feldman, FirstMerit served Reliable in State Court on February 9, 2015. Since Reliable did not respond or appear, the court issued a final judgment against the company for the amount of Feldman's debt, $614,657.38.

Shortly after FirstMerit sued Feldman, in April of 2012, she formed The Kloysner Group with the Barbier Defendants. During Feldman's examination for the state court case, she provided no meaningful testimony about the formation or purpose of Kloysner other than stating that money was put into the company. Kloysner's address was a residence where Feldman was primary owner and shared ten percent interest her daughters. It was never registered to do business in the state of Illinois, nor did it have any employees. Kloysner also did not observe any corporate formalities after its formation.

Soon after creating Kloysner, Feldman transferred a total of $484,000 of Reliable's assets to the new company without any consideration, and thereby diminished the value of Feldman's interest in Reliable. All of the assets held by Kloysner originated with Feldman or Reliable.

On July 26, 2012, while under the control of Feldman, Kloysner transferred $150,000 to Maple Properties Development, Goldfarb's company, to purchase the Maple Ave Property in Northbrook, Illinois. Maple Properties Development then transferred the Maple Avenue Property by warranty deed to Kloysner.

On August 21, 2012, Kloysner transferred another $150,000 to Maple Properties Development for the Maple Avenue Property, and two months later, Kloysner transferred the Maple Avenue Property, without receiving any consideration, to Feldman and the Barbier Defendants as joint tenants by quitclaim deed. Kloysner then paid $48,961.06 to third parties in order to develop and improve the Maple Avenue Property for the benefit of the Barbier Defendants, who remain in sole possession and control of it. Again, Kloysner did not receive any consideration for these money transfers and Feldman received no economic benefit from her interest in the Maple Avenue Property.

Feldman also used Kloysner assets to pay her personal expenses. Feldman withdrew $64,000 on August 21, 2012 and $20,000 on July 29, 2014 from Kloysner without giving any consideration for the transfer. Additionally, she paid her close, personal friend George Averbuch $7,500 from Reliable's assets on August 12, 2014.

Finally, on June 5, 2015, in spite of the state court's order permitting FirstMerit to collect Potomac's debt from Reliable, Feldman, through Reliable, transferred $234,500 to YMS (the "YMS Transfer"). Goldfarb owns YMS with his wife, who is Feldman's daughter.

3

The value purportedly provided to Reliable by YMS was the transfer of uncollectable debt obligations that had little to no value at the time they were exchanged because the debtors were all likely insolvent ("worthless obligations"). Neither Feldman nor Reliable made any attempt to collect on the worthless obligations.

**Legal Standard**

Rule 12(b)(1) permits dismissal of a claim based on a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and it must be conferred upon this federal court in order to hear the instant case. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Western Transp. Co. v. Couzens Warehouse & Distributors, Inc.,* 695 F.2d 1033, 1038 (7th Cir. 1982).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. *Gardunio v. Town of Cicero,* 674 F. Supp. 2d 976, 983 (N.D. Ill. 2009) (Dow, J.). Put differently, "[t]he issue involved is not whether the claimant is entitled to prevail, but whether the claimant is entitled to offer evidence in support of the claims." *Id.* (citation omitted).

When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009).

In addition, Federal Rule of Civil Procedure 9(b) dictates that a party must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b)'s pleading threshold, the pleader must detail 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (internal quotation marks and citation omitted).

**Discussion**

1. *Subject-Matter Jurisdiction*

Defendants make mention of Federal Rule of Civil Procedure 12(b)(1) in their initial statement of the Motion to Dismiss; however, they present no argument to this point. Given that the parties are citizens of different states and the amount in controversy exceeds $75,000.00, complete diversity exists. Thus, this Court has jurisdiction to hear the case. 28 U.S.C. § 1332. Since Defendants have not provided sufficient argument to support their position, the issue of subject-matter jurisdiction is waived. *United States v. Dunkel*, 927 F.2d. 955, 956 (7th Cir. 1991).

2. *Failure to State a Claim.*

   a. *Actual Fraud - Badges of Fraud*

Defendants argue that Counts I – XV[1] of FirstMerit's complaint are deficient because it has not pled actual fraud with the requisite particularity. "To establish 'actual' fraud under § 5(a)(1) [of IUFTA], a plaintiff must allege that a debtor made a transfer with

---

[1] Defendants indicate Counts I-XV, but only Counts I-XII are fraudulent transfer claims.

actual intent to hinder or defraud a creditor, regardless of whether the creditor's claim arose before or after the transfer was made." 740 ILCS § 160/5(a)(1); *see PNC Equip. Fin., LLC v. Zilberbrand*, 2014 U.S. Dist. LEXIS 13795, *10 (N.D. Ill. Feb. 4, 2014) (Lefkow, J.); *GE Capital Corp.*, 128 F.3d at 1078. So, for a claim of actual fraud to succeed, a creditor must establish intent to defraud.

Fraudulent intent can be inferred by alleging a sufficient number of the "badges of fraud," or indicators of fraud, outlined in IUFTA. 470 Ill. Comp. Stat. 160/5 (b) (1) – (11). "Although the court may consider the existence of the badges of fraud in order to determine whether fraudulent intent exists under the UFTA, there is no absolute combination or number of badges a claimant must allege in order to state a sufficient claim." *Shapo v. Engle*, 98 C 7909, 2000 U.S. Dist. LEXIS 1691, at *9 (N.D. Ill. Feb. 10, 2000) (Kocoras, J.). Courts have found fraudulent intent with the presence of as few as five badges. *See Whittom v. Kroll (In re Whittom),* 220 B.R. 365, 370 (Bankr. C.D. Ill. 1998) (finding that, in the absence of rebuttal evidence, the five factors offered were "a classic indication of fraud.").

In the Amended Complaint, FirstMerit alleged that transfers were made to Feldman's insiders; that Feldman continued to exercise control over the funds transferred to Kloysner; that the transfers were not disclosed to FirstMerit; that the transfers were made after Feldman was sued; that the transfers were made for less than reasonably equivalent value; and that Feldman was insolvent following the transfers. (Pls' Am. Complaint, ¶¶110, 111, 118, 126, 130, 136, 141, 145, 151, 156, 160, 166). At this juncture, FirstMerit need only offer sufficient factual support to render the claim plausible, not to definitively prove they will prevail. As there is no absolute number or combination of indicia required to establish the presumption of fraudulent intent, the six badges of fraud pled by FirstMerit in Counts I-XII, if taken as true, establish a sufficient factual basis for actual fraudulent transfer.

6

b.  *Constructive Fraud - Reasonable Equivalent Value*

"A plaintiff may also establish 'constructive' fraud as to a creditor under § 5(a)(2) [of IUFTA] by alleging that a defendant debtor made a transfer, either before or after the creditor's claim arose, without receiving a *reasonably equivalent value* in exchange for the transfer." *United Cent. Bank v. Sindhu*, No. 10 C 2878, 2014 U.S. Dist. LEXIS 103650, at *8 (N.D. Ill. July 29, 2014) (Zagel, J.) (emphasis added). The elements of this cause of action are as follows: (1) the creditor's claim arose before the transfer; (2) the debtor made the transfer without receiving a reasonably equivalent value; (3) the debtor was insolvent at the time of the transfer or became so as a result of the transfer. 740 ILCS 160/6(a). Defendants only contend that FirstMerit's claims fail under constructive fraud because they have not pled any facts that show that the conveyance or payment was not made for reasonable equivalent value.

Whether a debtor received the reasonable equivalent value is a question of fact. *Cordes & Co., Ltd. Liab. Co. v. Mitchell Co., Ltd. Liab. Co.*, 605 F. Supp. 2d 1015, 1021 (N.D. Ill. 2009) (Castillo, J.). The IUFTA provides that "[v]alue is given for a transfer or obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied." 740 Ill. Comp. Stat. 160/4 (a). "[V]alue does not include an unperformed promise." *Id.* The determination of value is viewed from the vantage point of the creditor since its purpose is to protect them from fraudulent conveyances. *Pnc Equip. Fin., LLC* 2013 U.S. Dist. LEXIS 44307 at *13. Consequently, the inquiry here focuses on what the debtor gave up in the transfer and received in exchange that could be used to benefit the creditors. *Id.*

In Paragraphs 68-101 of the Amended Complaint, FirstMerit outlined the various transactions that stripped Reliable's account and how these transfers were made in exchange

7

for either no consideration, personal or familial benefit, or worthless obligations. (Pls' Am. Complaint, ¶¶ 68 – 101). FirstMerit's complaint sufficiently alleges that Reliable relinquished real money in the transfers, but the exchanges did not satisfy any pre-existing obligations, obtain property, or generate funds that would enable Reliable to satisfy its debt to FirstMerit. Accordingly, it can plausibly be inferred that Reliable did not attain reasonably equivalent value.

FirstMerit's claims of constructive fraud for Counts I-XII under IUFTA are pled sufficiently.

    *c.*    *Reliable Medical as Feldmanh's Alter Ego*

Defendants claim that FirstMerit did not present evidence to support treating Kloysner as the alter ego of Feldman. "Evidence of commingling of funds, using corporate funds for personal expenses, undercapitalization, and failing to maintain appropriate corporate formalities are all sufficient to pierce the corporate veil and show [that a company is] only [an] alter-ego[] of the perpetrators of the scheme." *Fid. Nat'l Title Ins. Co. v. Howard Sav. Bank*, Nos. 02 C 643, 02 C 644, 02 C 646, 02 C 647, 02 C 648, 02 C 649, 02 C 651, 02 C 667, 02 C 668, 2003 U.S. Dist. LEXIS 25933, at *8-9 (N.D. Ill. Feb. 10, 2003) (Hibbler, J.).

Here, FirstMerit has alleged that Feldman was the sole president, owner, officer, and only employee of Reliable. (Pls' Am. Complaint, ¶¶ 30-34). They also alleged that Reliable did not observe corporate formalities; had ceased conducting legitimate business; had no creditors to speak of; and did not make meaningful distributions to its shareholders. (Pls' Am. Complaint, ¶¶ 35-38). As the entity existed and functioned solely to hold assets for Feldman's benefit and pay out her personal expenses, it is plausible, based on the facts, that it was an alter ego, and when it became insolvent, she did as well.

Given that sufficient facts were pled to demonstrate that the corporation was actually the alter ego of Feldman, this Court finds that Counts I-III are adequately pled.

        *d.*        *The Barbier Defendants and Goldfarb are Transferees Subject to Judgement.*

Defendants claim that FirstMerit failed to plead any facts that support the Barbier Defendants being debtors. By definition, a debtor is someone "who is liable on a claim." 740 Ill. Comp. Stat. 160/2 (f). A "creditor may recover judgement for the value of the asset transferred . . . [against] the first transferee of the asset or the person for whose benefit the transfer was made." 740 Ill. Comp. Stat. 160/9 (b) (1). Transferees can defend against a debtor's fraudulent transfer by demonstrating that they took the value in good faith and "gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C.§ 548(c); *Jimmy Swaggert Ministries v. Hayes (in Re Hannover Corp.)*, 310 F.3d 796, 799 (5th Cir. 2002). "The burden of proof is on the defendant transferee," however. *Id.*

FirstMerit presented facts that the Barbier Defendants, as members of the Kloysner Group, were involved in a fraudulent transfer scheme where they received money transfers and land purchases from Reliable without providing consideration. (Pls' Am. Complaint, ¶¶ 50-55, 74-82). These factual statements, if true, go beyond mere speculation, but actually demonstrate a plausible enough showing of their fraudulent involvement to satisfy the pleading requirement. Furthermore, Defendants can only escape liability by proving the transfers were made for value and in good faith. They have not met their burden here.

The claims against Goldfarb arise out of his ownership of YMS. While he was absolved of his previous obligation as guarantor of the original debt, he may still be subject to judgement pursuant to 740 Ill. Comp. Stat. 160/9(b)(1) as a transferee in the fraudulent transfers from Reliable. In Paragraphs 87-95, FirstMerit contends that Goldfarb advised Reliable to transfer $234,500 to YMS, in exchange for uncollectable debts with little to no

9

value. (Pls' Am. Complaint, ¶ ¶ 87-95). Since the uncollectable debts could be deemed valueless, there are sufficient facts to support that he did not embark upon this transaction in good faith and could be liable to FirstMerit as a transferee in the fraudulent scheme.

For the foregoing reasons, this Court finds that Counts IV-VI and X-XII of FirstMerit's Amended Complaint are sufficient under UFTA.

**Conclusion**

Accordingly, Defendant's Motion to Dismiss all counts of FirstMerit's Amended Complaint is denied.

IT IS SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Court Judge

Dated: November 6, 2017